for the 5th Circuit. We have one case on our docket this morning, and we'll call that case now. Number 20-30289, Lindsay v. Bio-Medical Applications of Louisiana. Liz Jones will hear from you first. May it please the Court. Alison Jones, counsel for Leisha Lindsay, plaintiff-appellant in this case. We are here this morning, Your Honors, because the district court erred when it granted summary judgment. Fortunately, this court reviewed summary judgment with a de novo review, applying the same standards applicable to the district court, and this error can now be corrected. We have submitted four assignments of error, addressing issue number one. It was error for the district court to exclude and to refuse consideration of Ms. Lindsay's sworn declaration. In addition to her opposition brief, Ms. Lindsay submitted a sworn declaration and a demonstrative timeline. BMA, the appellee in this case and the defendant, filed a motion to strike both filings, and Ms. Lindsay filed an opposition to that motion to strike. The district court, in its ruling, found that it did not need to rule on BMA's motion to strike the declaration, as it was mooted by the court's own decision to strike the declaration. The district court struck the entire declaration on grounds that consideration of the same would have caused Ms. Lindsay's brief to exceed the page limitation set forth in the local rule 7.8. The court stated specifically in footnote 12 of the memorandum ruling that 7.8, it noted that the font of the table of authorities and the signature line on page 26 of the brief violated 7.8 of the rule. But if you look at 7.8 local rule, it specifically excludes the table of authorities and a page count, and it was nothing that violated that with respect to the page count. So the district court simply misread its own local rule when it stated that Ms. Lindsay made attempts to allow for initial expansion of the page limitation. Also it was error to not consider the declaration because Rule 56 specifically allows for declarations such as the one submitted by Ms. Lindsay to be considered when considering summary judgment. There was nothing improper about Ms. Lindsay submitting a sworn declaration. If the court had not made that error and if Ms. Lindsay's declaration had been considered, substantial evidence would have existed such that summary judgment would have been denied. This is not a case where the declaration should either be stricken or dismissed by the court. Do you know if there's some sort of local practice that this reasoning about the declaration would apply to or just the first time you've ever heard of this judge doing that? The first time the judge, I've practiced in front of this judge since he's been on the bench, and I have submitted declarations of this sort. I have never had the judge strike a declaration of this sort. I've practiced for 37 years. I have always submitted my statement of facts and tied it to a declaration signed as Rule 56 allows me to do. I have never had a declaration stricken. So it was a surprise to find that the declaration was stricken by the court. But doesn't the declaration conflict with her own deposition testimony? I mean, that's . . . I've actually litigated that issue once upon a time. A plaintiff cannot create a genuine issue of fact by contradicting her own sworn testimony. So wasn't that . . . isn't that present here? Your Honor, no, it's not. Rule 56C-A, I believe, says that a declaration has to be based on personal knowledge, it has to be admissible testimony, and it has to be made with someone's capacity to testify. She may . . . she had all of those things. But beyond all that, though, she can't contradict or correct her deposition testimony. In other words, she doesn't get a second bite at the apple to defeat summary judgment. I absolutely agree with that statement, but that's not what occurred in this case. In this case, the deposition testimony was consistent with her declaration. Her declaration said that there was a deadline for these particular reports. But what her declaration and her testimony said that. What her declaration says was it wasn't a final deadline. She had never been counseled on missing the deadline, and she was never told in writing or by any other information that this deadline should be given priority over other fixed deadlines in this case. And so we would contend that her declaration did not . . . was not inconsistent with her deposition testimony. In fact, it merely explained the deposition testimony and explained why being noticed of this particular deadline and missing it, she didn't believe was grounds for termination because she had never been counseled or they had never followed their progressive discipline policy with respect to that, and she wasn't aware that it was a final deadline to be given priority. So, in this case, the district court found there were two reasons proper for the termination of her informant, and they were cumulative reasons, successive addition reasons. One was absenteeism, and one was the failure to present this report. The district court found pretext as to absenteeism, and then it said that this was a legitimate reason, but in doing so, it specifically said that it did not consider her declaration, and that is what we believe is error in this case. The district court also said in this . . . had the court considered that declaration, there would have been a genuine issue of fact. The district court also . . . Counsel, I have a record question. So, I'm looking at the corrective action form, and I see on the three forms that are in the record, I see the progressive discipline, so I see it starts at documented counseling and goes up to termination. Is there any place in the record that explains the progressive discipline policy that the employer had in this case, or is it just that I can look at this and intuit that that's progressive discipline? I would have to go back and look at the record, Your Honor, but I believe the employee handbook was made a part of the record, as was that progressive discipline policy. Certainly, this is not a case where the defendant denies that they engaged in progressive discipline policy because they did it throughout the course of her last year with the defendant. What's interesting is the corrective action form that you're looking at, she actually complied with, and it never once mentioned this TARDI report. It was for absenteeism. And that was going to be my next question. So, what does the employee handbook or the progressive discipline policy say about the employer's obligation either to follow the five steps or to specify the grounds for corrective action? I think it says that, just as other progressive discipline policies say, that you do a verbal warning, a written warning, and in this case, we pointed out that after she complained about retaliation for her leave in early 2017, that they issued a final written warning in contradiction to the progressive discipline policy. Once again, not saying anything about these particular TARDI reports, and it wasn't until the termination that she learned that this was grounds for termination. This isn't a case like the, I think it's Orwell, I can't remember the name of the case, but it's a Fifth Circuit case that says, if you don't show that there's a progressive discipline policy or if you show that the defendant has never engaged in that, then it can't be used as pretext. Here, the case is replete with evidence that they had a progressive discipline policy and that they didn't follow it with respect to the grounds that they submitted were grounds for termination, cumulative one of which was found to be pretext. But you don't happen to have a record site for the progressive discipline policy, do you? I'm pretty sure it's cited in the record. I cannot give the court the exact record site, but I'm almost certain it's cited because I know that I referenced it. I believe in my opposition memorandum. Sorry, I can't give the specific record site. The second assignment of error in this case is the district court felt or determined that Ms. Lindsey was not entitled to a mixed motive consideration on her motion of assembly judgment because the court said, quote, at no point has Ms. Lindsey ever conceded that any proper reason was true. And I can't give the court the site on that. That's record 508, page 11 of the ruling. As I previously stated, the defendant articulated two cumulative reasons. One was absenteeism with the district court found to be pretext and the other was the failure to provide timely reports. Once the determination is made that there is an illegitimate reason, then under the Richardson v. Matronix case, a mixed motive instruction may be given by the district court. In this case . I am not fully sure how that relationship will be formed, but I do know that there will be some uncertainty in the terms of what you expect after having given me consent through civil claims and civil litigation and such a thing. This is not in the declaration where there is evidence that she felt compelled. What's the law that supports your position that her feeling compelled is enough? Well, I think it's not just her feeling. It's her feeling combined with the facts that are not in dispute. And those facts are that no one was ever assigned to fulfill her job responsibilities while she was out on leave. What's your case that says that's enough? I don't know that there is a case other than Rule 56, which says it sets up a genuine issue of fact. But is it genuine? I understand. There are cases that say that self-serving testimony is not enough. And clearly, if you look at this just on its face without looking at the contextual facts that are presented, a court may conclude that it was self-serving. You've got one minute left. I think you had a fourth point you want to make? I do. The other issue is the whistleblower claim. Admittedly, in the brief, the wrong statute was cited in Ms. Lindsey's opposition brief. However, a clear reading of paragraphs 15 through 23 of her declaration, Record 352, shows that in essence, Ms. Lindsey was refusing to participate in the theft of prescription drugs. And that type of theft is illegal in all states. So even the state of Louisiana. Therefore, a jury should have been allowed to hear that claim. But counsel, isn't that whistleblower claim foreclosed by our precedent as well as Louisiana precedent that says you've got to have an actual violation of the law? It does. This was at best a proposed idea, right? Well, no. The Louisiana state whistleblower statute says that you have to refuse to participate in something that actually violates the law. But doesn't our precedent construing the statute 23-967 say that that is grounded on an actual violation of law? And theft is, whether or not they actually performed the act, or whether or not she refused to participate or spoke out against and reported and opposed something that would have actually violated the state law. And that's the contention of Ms. Lindsey in this case. Your theory is the employer or the employer's agent doesn't actually have to do the act. It just has to be a discussion of an act that turns out to be illegal. That's your reading of the law? That's the theory of the case. And I notice that I'm out of time. If I could just answer one final statement. It's interesting if you look at the timing here. She made that complaint. She followed up with a letter over the Labor Day weekend. The email that put her on corrective action was issued at 6 a.m. the next working day. So we have causation. The question is, do we have coverage under the statute? Here, she reported and she refused to participate in something that would have been a violation of state law. You preserve five minutes for rebuttal. Okay. Thank you. Thank you. Mr. Unger? We'll hear from you. Good morning, Your Honors. Hal Unger on behalf of Biomedical Applications of Louisiana, LLC.  The question in this case is pretty straightforward, Your Honors. The question is, can an employer fire a supervisory employee when they shirk their responsibilities month after month to submit reports to the federal government, the failure of which would result in federal government audit? That's why the district court dismissed the case. Did you have an obligation to bring that deficiency to the employee in a corrective action form? No, Your Honors. So, Judge Oldham, I heard you asking questions about corrective action, excuse me, progressive discipline, whether or not that's in the record. So on document 402, page 402 of the record, you can find the progressive discipline. And on the, towards the bottom of the page, you'll see, I'll allow Your Honor to get there. Please. You'll see it says corrective action in the second paragraph under corrective action. It says it is FMCNA's policy that corrective action be escalating beginning with the least severe action necessary to correct substandard performance or conduct and increasing in severity if the condition persists or subsequent infractions occur. If I were to add emphasis, I'd add emphasis to the next words that I'm about to read. Unless circumstance warrant immediate termination of employment. So the progressive discipline policy allows for immediate termination when the conduct is sufficiently severe. So you're saying this was a big deal, missing a deadline. Yes. Missing a series of these deadlines. Absolutely. Critical to the business. Absolutely. Why was this not then the main point behind the termination decision? I'm not sure that it wasn't the main point. The document provided. Isn't that the document. The document did provide two explanations and this was one. And what was the main point specified? The main reason, if you will, behind the termination. I think the document provided two reasons for the termination. I'm not sure that anything was underscored as the main reason. Am I misunderstanding that there was a reference to the main point being the absenteeism and not this alleged business. I do. I'm not sure, Your Honor. I'm not aware of that. But even if it is the main point, let's assume arguendo it's the main point. The plaintiff's burden is to prove pretext relative to each explanation for the termination. And Your Honor asked my opponent whether or not if the court finds pretext as to both of those decisions if the issue would be triable. And I think the answer is yes. But the problem is, is that there's no actual competent evidence to create a triable issue out of the Network 13 tracking tool explanation for the termination. Well, but as I understand it, and tell me if I've misunderstood the record, you got the evidence that this was the lesser reason, the primary reason being the pretextual reason. So this is even less compelling than a pretextual basis. You've got the complete lack of any warning that this is a meaningful, important deadline as opposed to one of any number of deadlines that people impose but aren't all that important as it turns out. And you've got the specific notion, as I understand it, that when the employee responded, look, I'm sorry, I'm going to be missing this deadline this time, the response was thank you. Am I misunderstanding the record in that regard? Respectfully, Your Honor, a little bit. Okay, please. So there was a process to teach the plaintiff about the deadline and why it's important. So there's allegations that she wasn't warned, that it wasn't emphasized to her. There's 10 pages in the record of this case, pages 196 to 206, 207, excuse me, which is an exchange with the plaintiff at her deposition with the various emails and documents that my client had hired to make sure that these reports were submitted timely so that they didn't get audited, so that they didn't lose federal funding, that they didn't get in trouble with CMS. And so she trains in the orientation in January of 2017. The testimony is that the orientation taught her about the 5th as an important deadline. The testimony supports that she testified that the February 6th report was late. The testimony supports that she testified that she was reminded in March about the March 5th deadline. She was reminded on March 8th, didn't submit the report until March 9th. These are reminder emails from somebody tasked with— Everything you've said so far is that this is a deadline. Yes. A deadline that people would like there to be compliance with. What I've not heard is either of the following two, that missing this deadline is the sort of fatal, critical thing for the business, and that the employee was actually ever told that this was a very serious deadline as opposed to one where she'd be essentially excused from missing it. So the employer— From missing it. I understand, Your Honor. The employer participated— I assume you agree not every deadline is an actionable, dischargeable offense, missing a deadline. I think that's right, that there's probably a large scale of deadlines in the world of employment, and there's something on the far left and something on the far right. And so where does this fall? Right. And so if the court is asking me, did the defendant inform the plaintiff that it's important to submit catheter tracking tools to the federal government in order to make sure that the federal government doesn't audit them, she was the clinic manager for 18 years. She worked at the clinic for a long time, and she was not satisfying an obligation that was placed on her by the federal government. The person that my client did employ to inform her about these deadlines to comply with them was doing it nonstop. But what do you do—and Judge Ho raised this point also—what do you do with the evidence where she said, I called and said, you know, I'm going to be late, and the answer was, from the person accepting the report, which I guess was with the government, right? Thank you. In other words, doesn't that create a genuine dispute of fact? Well, how many times in a row does somebody get to be late, I guess, might be the question, Judge Oldham. And I will clarify something. The person she was emailing with was not with the government. It was an internal employee that worked for my client who was the liaison to make sure that this reporting was happening, that they would submit to the government. And so the question becomes, you reach out. The first report, due February, it was late. Plaintiff concedes it was late. It was a day late. That's not disputed. I think it's in the record. The next month, which is month two, the report's now three days late. It's going to be four days late. That's in plaintiff's deposition testimony.  But counsel, and again, not to interrupt you, but again, to touch on this. All that's well and fine, but you've actually got then . . . I appreciate the clarification. Someone from inside the company conveying the message, no big deal. Thank you. So, no, you're wrong. No big deal's not in the record. Well, but thank you is, and there's certainly not . . . this is a very important deadline. This is going to be a big problem. I mean, you've got nothing like that, right? What I do have, as it keeps getting worse, with an employee who continues to miss the deadline, that is real. She's missing. You're . . . I assume, I apologize, I should know this. You're a partner at a major law firm. Yes. Well, no, I'm of counsel. Forgive me. I'd like to be a partner. All right. We'll do our best. Thanks, Judge. You're doing great here. Thank you. So, you have associates, though, of counsel or otherwise. Yes. You have associates who work for you, who produce draft opinions, draft briefs and whatnot, draft memos. Let's hypothesize that you set a deadline, that whenever you have a court brief that the associate is working on, that associate needs to submit that draft to you two weeks ahead of the court's deadline. Because, obviously, it would be critical to the business, to the firm, to your clients to miss court deadlines. Let's say you have an associate that routinely, for 18 years, has done great work for you. Hopefully, that person's a partner by now. For 18 years, obviously, I'm analogizing this case, but they also regularly miss this deadline. They turn in the draft one or two days late. Dischargeable? Well, I don't want to ask a question back, but on your hypothetical, this person made one mistake, one time. No, no. Serious. So, they keep missing the deadline. Right. So, it's happening month after month. Case after case after case after case, this person misses the two-week deadline. But, obviously, my hypothetical is designed on the premise that the two-week deadline is not a real deadline. It's hortatory. It's important to try to . . . It would be helpful to you as the managing lawyer for them to . . . It's not nothing. You did set the deadline, but you're not going to fire the person based on it. And, more importantly, you never warned that. Okay. So, I think that's where the hypothetical departs from the actual circumstances of this case, which is that not submitting the tracking tool report, which could result in CMS audit, is more serious than an associate missing the internal deadline. Did it? Were there any consequences for the business? Was there any . . . I'm sorry. I'm sorry. I know the audio is bad here, and I apologize. That's definitely not your fault. Were there any consequences in the record for the business by these repeated missed deadlines? No. There are not consequences in the record for the business, but there are absolutely consequences in the sense that we have employees who are trying to do their job, and instead of doing what they're supposed to do, which is finalizing the reports and submitting them, just to follow up and go get them. So, I think the last experience was the most evident as, like, why the sirens were going off, that something's really wrong and we need to terminate this employee. So, the July report was due on July 5th. It doesn't come in on July 5th because it never came in on the 5th during any of the time plan of work for the company when this report was required. Do you get a sense . . . I'm sorry. Your honor looked like you were going to ask. I appreciate the repetitive nature of the violations. The thing I'm struggling with is I don't understand how that helps you, because it strikes me that one of two propositions can be true, but they can't both be true. One, you routinely miss the deadlines and nothing terrible happens, or two, you miss the deadline and it's so immediate that the text you gave me on 402, this is an immediately fireable offense and we have no obligation to tell you about anything in a corrective action report, but I don't understand how both propositions can be true, that it is repeated, constant, month after month after month violations of the 5th deadline and then all of a sudden, now we have to fire you immediately. So, the company puts systems in place to make sure that they don't miss deadlines, right? And some of those systems are the internal deadlines that are required for the tracking tools to be submitted. And so, you're asking me how can it be consistent that that deadline exists, but also that it happens month after month after month. And I think the answer is, is similar to what Judge Ho might be asking me and why it feels like we're going up a hill. It's, you missed the first deadline, you tell me you missed it, you admit you were late, you submitted it a day late, fine. You missed the next deadline, which was in March. This time it was three days late when I followed up. I didn't hear from you until you submitted it four days late. In June, by the time we get to June, the quality control person is sending what they're doing. And then in July, and that's what I was trying to explain to Judge Wilson, so forgive me. In July, the report was not submitted on the 5th. The quality control person emailed the plaintiff on the 7th and said, get it in by the 10th. What sanctions were imposed for the earlier missed deadlines on the employee? I'm not aware of sanctions in the sense that she wasn't . . . Docked pay. She wasn't docked pay or anything like that. Any other types of penalties? Other than being told over and over by the people to whom she was reporting that she wasn't doing her job timely, no. So it went straight to termination. No. It took six months of her failing to . . . I meant after the repeated violations, you just immediately terminated. Well, I think I'm challenging the use of the word immediately because it wasn't. It was a long process of failures and problems that led to the termination. So the final issue, the quality control person sends an email and says, this is due on the 10th. You didn't submit it to me on the 5th. Today's the 7th. Get it to me by the 10th. Plaintiff didn't submit it by the 10th. So now it's five days late. The quality control person sends another email on the 12th, gets elevated to another supervisor who's like, what's going on? And that's what basically brought it all to a head, which is that it was six months of this, and we can't have this, and we need to report timely, and we need our quality control person to do the quality check, not remind a clinic manager to do her job. And so plaintiff's . . . and just to get it back to plaintiff's burden, so the issue here really is does plaintiff have the evidence to dispute that explanation? We're talking a lot about it. Counsel, to that point, what do you say to counsel opposite's assertion that her declaration was improperly excluded, that it wasn't conflicting with her deposition testimony, that it was explaining it? Should the court . . . or did the district court err in not allowing that evidence? The judge definitely said that he wasn't considering the declaration. It's explicit in the opinion. We briefed in our brief a showing where it looks like the district judge was relying on the allegations in the declaration. We made that show. Judge, you asked about what's custom usually in the district. I think sometimes what happens if the district judge wants to say that a I don't think I should consider this declaration, but I'm going to consider it anyway, or drop my footnote and say, you know, it doesn't really matter, and I was going to dismiss this case no matter what. And that's how the opinion reads to me. And that was kind of the showing that we were trying to make in the brief. So it looked to me like he read the declaration. So I've got it. I've got the plaintiff's statement. No, but your point is even if we assume that that was a violation of court rules by the district court, that alone is not a basis to revert. Right. So I think we should look at the declaration because this court has the ability to affirm based on the record. You know, you guys are authorized to do that. And so the declaration, the only allegations in this declaration that relate to the Network 13 termination issue are in three paragraphs. They're in paragraphs 58 through 60 on record document 365. And I explained to the court all the deposition testimony with the plaintiff testifying about her emails and the missions and the deadlines. And this declaration, I don't want to read it to the court. The court can read it, but it's three sentences and it's basically like a nuh-uh. No, it's not. It feels like the plaintiff is submitting a declaration like the court addressed in the Salazar case, which is just a conclusive restatement to overcome an argument about performance or about, you know, that case involves performance. The plaintiff was terminated because the employer provided competent evidence of performance. The court said we don't need to consider the declaration if it's a conclusive restatement. That's what these are. So that's what it feels like. So it's her burden to prove pretext with substantial evidence, which requires not only approving a fault when you don't have disparate treatment and there's no disparate treatment. So you've got to prove falsity and you have to prove that the reason why this is happening is because of the discrimination. Plaintiff doesn't do that with these three sentences. Doesn't. It's even worse if we get to motivating factor. I'm prepared to talk to the court about motivating factor, about how this court since 2013 has qualified motivating factor cases under the FMLA, how the Supreme Court's case in Gross and Nassar should direct this court if it's questioning whether motivating factors applies to the FMLA to declare that it does not. So counsel, your position is we apply the but-for test. That's the test. If I understand that right, then what plaintiff has to do is show that the pretextual reason for firing was the but-for cause for firing. In other words, the second cause couldn't be also a reason or the reason. Correct? Plaintiff has to prove pretext for any articulated reason. But how do we get to the but-for test in the face of our precedent, which has not been overruled by the court. Correct? That's right, Judge. I've read a lot of the cases from the court about FMLA retaliation. Well, I mean, I seem to say that, remember, the Supreme Court says it's its own prerogative to overrule precedent or those kind of things. And to get to where you want to go, we've got to find that the Supreme Court has impliedly overruled our cases in the FMLA about mixed motive, right? I think the court can get there by doing statutory construction. I think the court can get there by looking at the Gross case and the case of Kennedy about what Congress intended with the 1991 amendments to Title VII, about how they didn't put them in the ADEA, which means they're not in there, which means motivating factor is not part of the causation standard, about how the FMLA wasn't on the books until 1993 and Congress didn't add it to that. I think this court can do that. But do we get—just to be clear, do we get to the mixed motive issue if we were, hypothetically, to conclude that all of the asserted justifications are pretextual? So I don't think you would get to the mixed motive issue if you find that they're all pretextual. I also don't think you would get to the mixed motive issue, and you wouldn't have to get to the mixed motive issue, if you find, like I'm arguing, that the plaintiff's declaration doesn't make a tribal issue no matter what. And so I think the court can say that. I think the court could say, assuming arguendo, the motivating factor is actually something that should apply here, we can look at the two sentences in the record and conclude there's nothing competent to dispute the Network 13 decision, and that could be it. And you guys can affirm the dismissal based on that record. Let me just speak briefly about interference and about whistleblower because I have two minutes left. I think Your Honor's hit both of those issues square on the head. The Louisiana whistleblower law requires an actual violation of Louisiana law. There's no evidence that there was a violation of Louisiana law here. A conversation about some— I heard opposing counsel saying that's true, that there actually— maybe Parsons is right—it has to be, indeed, a violation of the law. Yes. But it doesn't actually have to be committed. That's just wrong. You disagree with that, right? Yes. I can give you the case. Counsel, is there a difference, to put a finer point on it, is there a difference between 23-967-A-1 and 23-967-A-3? No. The whistleblower statute, full stop, requires a violation of law. And so that's generally applicable—I'm sorry? Pursuant to the Fifth Circuit's case of McCulloch versus pocket machines, which is cited in our brief. But so then that means under A-3, even though it really goes toward an employee objecting to what would be an illegal practice or an illegal practice, that it's got to be an ongoing violation of law. In other words, it's got to already have been committed or be committed when the objection is made? No. I mean, maybe she can blow a whistle on a violation that is fixing to occur and come back and blow the whistle on it again. The key here is that a violation of law has to happen. And there's just no evidence in this record that it did. And, you know, the plaintiff is using the word probable in the briefing, which I think is kind of a nod to the idea that there's no actual record evidence establishing that the violation occurred. States have whistleblower statutes all the time that don't require the violation. The Louisiana Environmental Whistleblower Statute doesn't require an actual violation. It requires reasonable belief that a violation has occurred or will occur. This statute is different. The legislator wrote it differently, and it's required for a violation. My time is up, but if I could just speak for 30 seconds on interference. The reason why the court dismissed the plaintiff's interference claim, regardless of all of these arguments about whether or not she was required to work, is because the plaintiff didn't prove prejudice, which is an element of the FMLA interference claim. She has to prove that by showing, like, some loss of money, cost, value. That's what the U.S. Supreme Court case says in Ragsdale. And she didn't brief that. The word prejudice exists one time in the argument. It's not there. The district court dismissed that claim because plaintiff didn't prove prejudice, and she hasn't proved that here either. So on the whole, Your Honors, the court should affirm the dismissal. Thank you. Thank you. Ms. Jones, you have reserved five minutes. Addressing first, Your Honors, the issue of the failure to consider the declaration and the progressive discipline policy, which has now been answered and cited to the record. The case that I was referring to when I gave my opening argument was Goodow v. Orwell. I don't have the actual site, but it states that a failure to follow progressive discipline policy may give rise to pretext, and I think that would be applicable in this case. If the court had considered the declaration, paragraphs 58, 59, and 60 are not inconsistent with the plaintiff's testimony in her deposition. They explain that this particular deadline, while she did not meet it, that she didn't believe it was a final deadline and had never been counseled that it was a final deadline, had never been written up or told that it was a final deadline. And so then applying the Goodow v. Orwell case, that would be indicative of pretext in this case if the court had considered the declaration. I do want to address, just for a moment, the motivating factor but for analysis. I agree that if the court finds that there's pretext on both reasons proffered for the termination, then we don't ever get to that issue. But I would be remiss if I didn't address that issue since it came up during my opponent's oral argument. If you look at the text of the statute that was analyzed under Gross v. FBL and also under Nassar, the language of that text is because of. The language of the FMLA statute uses the word of. As Judge Smith recently commented in one of his recent decisions, Adam v. Memorial Hermann, that may not be a gulf of a difference, but it is a difference. And given where we are with that textual difference, then we have to look at where our case law has been. Richardson v. Medtronic has always indicated that you may get a mixed motive case in an FMLA case, even though you may also get a but-for. It depends. The district court makes that determination. Here, the district court didn't make that determination because it held that my client had not conceded that there was a legitimate business reason. That's where it erred because it violated Smith v. Xerox. I would point out two other things that the court may want to consider when considering mixed motive and but-for. Nothing in the FMLA statute either condones or prohibits a mixed motive analysis. Therefore, applying a mixed motive analysis really doesn't do violence to the statute. And then to Judge Wilson's question about whether this court could overturn a previous panel, I believe the case is Transocean v. Offshore that says unless there's a Supreme Court decision that unequivocally states that it mandates reversing a prior panel, then it should not be overturned. And as pointed out in my opposing counsel's brief, the Supreme Court has declined to hear this issue and has denied cert on the issue. So I believe Richardson v. Medtronic would still be the appropriate authority in this case. I would also say, and I think I pointed it out in my reply brief, that if the but-for analysis was applied, there's some really wonderful language in the Bostock opinion on how to do a but-for analysis. And if you apply the language of that opinion where you just remove one reason after another reason and you finally get down to the one reason that still exists, which here is the failure to file reports, could that be the but-for reason? And for all of the reasons that we've argued in the Declaration and for the failure to document and follow their own progressive discipline policy, I think the answer to that question is clearly no, and then you get to the summary judgment should not have been granted. I do want to address a couple of other issues. I absolutely respect the district court judge in this case. I've known him a long time. I believe him when he says he did not consider this Declaration. I don't think he would have said it if he didn't mean it. I believe him when he said that he didn't consider the mixed motive analysis for the reasons that he stated. I have no reason to question the veracity of a federal judge. He stated those things, and I believe him. This case, for those reasons, should be denied. One, it violates Smith v. Xerox. She shouldn't have had to concede it. And two, the Declaration should have been properly considered and the local rule was simply misread, and it creates genuine issues of fact. And for all of those reasons, Your Honor, I believe that this court should reverse and the case should be remanded for further consideration, and my client should be allowed a jury trial. Thank you. Thank you. The case is submitted, and we shall be adjourned.